## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JERRY A. HURST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 10-1001-GMS |
| | ) |
| STATE FARM MUTUAL AUTOMOBILE | ) |
| INSURANCE COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

## **I. INTRODUCTION**

The plaintiff, Jerry A. Hurst ("Hurst"), who proceeds *pro se*, filed this lawsuit on

November 22, 2010, alleging violations of the Driver's Privacy Protection Act ("DPPA"), 18

U.S.C. §§ 2121 through 2725, that in turn violated 42 U.S.C. § 1983 and Hurst's right to privacy

under the Fourth Amendment to the United States Constitution. Hurst further alleges conspiracy,

retaliation, fraud, abuse of process, intentional infliction of emotional distress, tortious

interference with a contract, tortious interference with business relations, inadequate hiring,

training, supervision and discipline, and breach of contract. He also alleges, generally,

constitutional claims and State law claims. (D.I. 2.)

Before the court are motions to dismiss filed by the defendants United National Insurance

Company ("UNIC"), the City of Rehoboth Beach ("Rehoboth Beach"), Harleysville Mutual

Insurance Company ("HMIC"), Marty Harbin ("Harbin"), Colin Shalk ("Shalk"),[1] Kevin

---

[1]Shalk is improperly named as "Collin Shalk." (*See* D.I. 31.)

Connors ("Connors"), Keith Banks ("Banks"), Walter Speakman ("Speakman"),[2] Guy Harbert ("Harbert"), Maxwell Wiegard ("Wiegard"), and State Farm Mutual Automobile Insurance Company ("State Farm").[3] (D.I. 23, 26, 28, 29, 32, 43, 44, 51, 60, 61, 64.) Also before the court are UNIC's motion for leave to file excess pages of its memorandum of law, Hurst's motion to strike the motions to dismiss, Hurst's request for default as to Banks, Hurst's motion to substitute a personal representative for Speakman, and Speakman's motion to substitute a party. (D.I. 25, 36, 38, 66, 70.) For the reasons that follow, the court will grant the motions to dismiss and will direct the Clerk of Court to close the case.

## II. BACKGROUND

This action stems from State Farm's denial of an insurance claim made by Hurst for the April 3, 2001 theft of his customized van. The court takes judicial notice that Hurst has filed four other lawsuits regarding the theft of the van, as follows:

1. *Hurst v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 04-1350-TSE-BRP (E.D. Va.), a RICO action against State Farm, Harbin, David L. Jones ("Jones"), Marshall Major ("Major"),

---

[2]Speakman died on July 13, 2011, but service was not effected prior to his death. Service documents were given to the decedent's son on August 3, 2011, who advised the server of his father's death. (D.I. 57.) Pending are two motions to substitute a party representative for the decedent. (D.I. 66, 70.) Because the court will grant the motions to dismiss, and finds that amendment would be futile, the motions to substitute a party representative for Speakman will be denied as moot.

[3]Hurst proceeds *pro se* and has been granted leave to proceed *in forma pauperis*, and, therefore, certain defendants have requested that the court screen the complaint pursuant to 28 U.S.C. § 1915. The complaint was screened at the time the service order was entered. (*See* D.I. 5.) Hurst contends, incorrectly, that, because the case was screened, the complaint survived dismissal, the service order is the law of the case, and the motions to dismiss must be denied. The defendants, however, have raised issues in the motions to dismiss that were not apparent from the face of the complaint at the time the court conducted its initial screening.

and John D. McGavin ("McGavin"), dismissed on November 15, 2004. Hurst did not appeal the dismissal.

2. ***Hurst v. State Farm Mut. Auto. Ins. Co.***, Civ. No. 05-1279-GBL-TRJ (E.D. Va.), filed November 7, 2005, alleging that State Farm breached the terms of an automobile insurance policy when it denied Hurst's claim for the 2001 theft of his van. Hurst attached as an exhibit to the complaint a non-redacted Affidavit of Vehicle Theft ("the Affidavit"). The complaint also alleged fraud, conspiracy, and intentional infliction of emotional distress. The matter was transferred from the Eastern District of Virginia to the Western District of Virginia on December 21, 2005, *Hurst v. State Farm Mut. Auto. Ins.*, Civ. No. 05-776-GEC (W.D. Va.), and summary judgment was granted in favor of State Farm, affirmed on appeal, on April 29, 2009.

3. ***Hurst v. State Farm Mut. Auto. Ins. Co.***, Civ. No. 08-2907-WMN (D. Md.), a RICO action against State Farm, Harbin, Jones, Major, and McGavin, dismissed on November 19, 2008, as barred by res judicata, affirmed on appeal on April 29, 2009.

4. ***Hurst v. City of Salisbury***, Civ. No. 10-2516-WDG, alleging violations under the federal criminal code, as well as breach of contract, tortious breach of contract, bad faith and intentional infliction of emotional distress, against the City of Salisbury, Chief Webster, Captain Wiley, Officer Smullen, State Farm, Major, Harbin, McGavin, Wiegard, and Harbert, dismissed as barred by res judicata and, in the alternative, as time-barred, affirmed on appeal, on May 31, 2011.

The instant complaint contains fifteen counts: (1) Count I alleges violations of the DPPA; (2) Count II alleges violations of 42 U.S.C. § 1983 by reason of the DPPA violations;

3

(3) Count III alleges violations of privacy rights under the Fourth Amendment of the United States Constitution by reason of the DPPA violations; (4) Count IV alleges constitutional violations of the right to privacy by publicizing private facts and by false light; (5) Count V alleges conspiracy; (6) Count VI alleges retaliation; (7) Count VII alleges fraud, fraudulent concealment, and fraud on the court; (8) Count VIII alleges abuse of process; (9) Count IX alleges intentional infliction of emotional distress; (10) Count X alleges tortious interference with contractual relations; (11) Count XI alleges tortious interference with business relations; (12) Count XII alleges inadequate hiring, training, supervision, and discipline; (13) Count XIII alleges breach of the covenant of good faith and fair dealing and privacy policy; (14) Count XIV alleges constitutional claims; and (15) Count VX alleges State law claims. Hurst seeks statutory, compensatory, and punitive damages, as well as injunctive and declaratory relief.

UNIC and HMIC, as insurers, provided a defense for Rehoboth Beach in lawsuits Hurst filed against it. Attorney Shalk was retained to represent Rehoboth Beach and Speakman, the city solicitor for Rehoboth Beach. Connors was retained to represent Banks, chief of police for Rehoboth. Attorneys Wiegard and Harbert were retained to represent State Farm in lawsuits Hurst filed against it. Harbin is a State Farm representative. (D.I. 2, ¶¶ 15, 19.)

The instant complaint alleges that Hurst received a November 24, 2008 letter from State Farm, "confessing" that State Farm, through its outside agents and legal counsel, disclosed Hurst's "personal information," including Hurst's social security number, driver identification number, address, and other information that identifies an individual, in violation of the DPPA. The complaint alleges that it was not until Hurst received the November 24, 2008 letter that he

4

became aware of the disclosure. The November 24, 2008 letter is not attached to the complaint. (D.I. 2, ¶¶ 1, 10, 11.)

The complaint alleges that, at an earlier time, the information was sent by Harbert, who along with Wiegard, was counsel for State Farm, to Shalk who was retained to defend Rehoboth Beach and Speakman in *Hurst v. City of Dover*, Civ. No. 04-083-GMS (D. Del.) ("the *Dover* case")[4] and in *Hurst v. City of Rehoboth Beach*, Civ. No. 03-362-SLR (D. Del.) ("the *Rehoboth Beach* case").[5] The court takes judicial notice that the Affidavit, the document in question, is on a State Farm form and had been attached as an exhibit to a complaint Hurst filed on November 7, 2005, in the United States District Court for the Eastern District of Virginia against State Farm in Civ. No. 05-1279-GBL-TRJ (E.D. Va.). It contains Hurst's personal information. The court takes further judicial notice that Shalk filed the Affidavit in the *Rehoboth Beach* case on November 29, 2006 (*Rehoboth Beach*, Civ. No. 03-362-SLR, D.I. 182, ex. B) and in the *Dover* case on November 12, 2008, (*Dover*, Civ. No. 04-083-GMS at D.I. 136, ex. 9B.) Hurst alleges that State Farm approved the "DPPA violations" as a bad faith settlement tool to coerce him to settle his insurance claim. (D.I. 2, at ¶¶ 3, 8.) He further alleges that the use of the information in the Affidavit is ongoing and its continued use violates the DPPA daily. (*Id.* at ¶ 11.)

---

[4]On September 18, 2009, summary judgment was granted in favor of the defendants and against Hurst. (*See* Civ. No. 04-083-GMS, D.I. 163.) Hurst filed an untimely notice of appeal, and the appeal was dismissed for lack of appellate jurisdiction on August 18, 2011. (*Id.* at D.I. 172.)

[5]Most of the claims and parties had been dismissed by the court when it dismissed the case, on December 6, 2006, pursuant to *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), affirmed on appeal on July 30, 2008. (*See* Civ. No. 03-362-SLR, D.I. 186, 218.)

In addition, the complaint alleges: (1) that each attorney, in representing his or her client, acted as an agent of the insurers or the insured; (2) that all actions taken were in accordance with, and implemented, the policies, customs and practices of the insurers and employers that have been in place since 2001; (3) that State Farm, and its agents and counsel, violated State Farm's contractual duty of good faith and fair dealing to protect Hurst's personal information; (4) that State Farm used its performance, planning, and review program for the purpose of retaliating against Hurst for his unwillingness to accept an inadequate settlement; (5) a conspiracy between State Farm and Shalk, as well as among all defendants for violations of the DPPA and federal statutes of obstruction of justice, wire fraud, mail fraud and related federal and state laws; and (6) that all defendants conspired against Hurst, not only to settle with State Farm in ongoing Virginia litigation, but also to intimidate, coerce, prevent and dissuade him from continuing in the *Dover* case.[6] (D.I. 2 at ¶¶ 10, 12, 13, 14, 17, 23, 24.)

All defendants move for dismissal under numerous theories pursuant to Fed. R. Civ. P. 12(b)(6). Hurst opposes the motions to dismiss and moves to strike the motions pursuant to Fed. R. Civ. P. 12(f).

## III. STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S.

---

[6]Hurst filed the instant complaint on November 22, 2010, well after April 29, 2009, when the appellate court affirmed the dismissal of the Virginia litigation.

6

89, 93 (2007). Because Hurst proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[7] *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Hurst has a "plausible claim for relief." *Id.* at 211; *see also Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570. In other words, the complaint must do more than allege Hurst's entitlement to relief; rather, it must "show" such an entitlement with its facts. A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* "[W]here the well-

---

[7]Hurst is not unskilled in the law. At one time he was a licensed attorney admitted to the State Bar of California. He maintains a "not eligible" status for failure to pay Bar member fees. *See* http://members.calbar.ca.gov.

7

pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. In making this determination, the court may look to the allegations made in the complaint, the exhibits attached to the complaint, and any documents whose authenticity no party questions and whose contents are alleged in the complaint. *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). Documents attached to a defendant's Rule 12(b)(6) motion to dismiss may only be considered if they are referred to in the plaintiff's complaint and if they are central to the plaintiff's claims. *Id.* "Courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient" unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 114 (3d Cir. 2002).

## IV. DISCUSSION

### A. Pleading Deficiencies

Harbin, Wiegard, Harbert, Shalk, Connors, Banks, Speakman, and State Farm move for dismissal of the complaint on the grounds that it fails to meet the pleading requirements of *Iqbal* and *Twombley*. More particularly, they argue that Hurst disclosed his own personal information in a prior pleading filed by him and he lacks a reasonable basis to assert claims against others for its disclosure. They argue that the complaint fails to set forth grounds that any of the defendants actually violated the DPPA. As to the remaining claims, they argue that the complaint fails to

8

state claims as it seeks to relitigate previously dismissed claims and attempts to bootstrap claims to the alleged DPPA violation. Finally, State Farm takes exception to the complaint's referencing the dissenting opinion in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 429-39 (2003), when the complaint pleads no factual grounds to state a cause of action as to State Farms' performance, planning, and review program.

With the exception of the DPPA, the complaint, for the most part, contains conclusory allegations, legal theories with no supporting facts, and does not contain sufficient facts, accepted as true, to state claims to relief that are plausible on its face. In addition, almost all of the claims are time-barred and many of the claims are barred by reason of claim and issue preclusion. As discussed in more detail below, even accepting all factual allegations as true, and construing the complaint in the light most favorable to Hurst, he has not set forth claims upon which he may be entitled to relief for violations of his constitutional rights and state and federal laws.

## B. Claim and Issue Preclusion

The court addresses the issues of res judicata and collateral estoppel raised by Harbin and State Farm as grounds for dismissal of the complaint. They argue that the instant complaint represents the last incarnation of previously adjudicated claims arising from State Farm's denial of Hurst's 2001 claim for the theft of his van. They argue that Hurst presents the same allegations as those contained in his prior litigation, but now frames them as violations of the DPPA. They urge this court to dismiss the complaint for the same reasons as set forth by the Maryland District Court in *Hurst v. State Farm Mutual Auto. Inc. Co.*, 08-2907-WMN (D. Md.)

The following history is relevant to dismissal on these grounds. In April 2001, the customized van of Hurst, a resident of Arlington, Virginia, was stolen in Salisbury, Maryland.

9

Hurst filed a *pro se* 28 U.S.C. § 1332 diversity action in the Eastern District of Virginia against State Farm, alleging that it breached his automobile insurance policy when it denied his 2001 van theft claim and that State Farm committed and conspired to commit fraud, and intentionally inflicted emotional distress. On December 21, 2005, the matter was transferred to the Western District of Virginia and, on September 26, 2008, summary judgment was granted in favor of State Farm as to the breach of contract claim, and affirmed on appeal. *See Hurst v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 4394759 (W.D. Va. Sept. 26, 2008), *aff'd*, 324 F. App'x 250 (4th Cir. 2009) (not published). The fraud, conspiracy, and intentional infliction of emotional distress claims had previously been dismissed based upon the statute of limitations and for failure to state a claim. *See Hurst v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 951692 (W.D. Va. Mar. 23, 2007);

On October 31, 2008, Hurst filed a 28 U.S.C. § 1331 action in the District of Maryland against State Farm and its agents, Harbin, Jones, Major, and McGavin. *See Hurst v. State Farm Mut. Auto. Ins. Co.*, Civil No. WMN-08-2907. Hurst accused the defendants of committing numerous federal crimes over a ten year period and further alleged breach of contract, tortious breach of contract and bad faith settlement, and intentional infliction of emotional distress, all related to the denial of his insurance claim on the 2001 theft of his van. The case was summarily dismissed with prejudice on November 19, 2008, under the doctrines of claim and issue preclusion, affirmed on appeal. *See Hurst v. State Farm Mut. Auto. Ins. Co.*, 324 F. App'x 261 (4th Cir. 2009) (not published).

Hurst filed yet another complaint in the District of Maryland on September 13, 2010, based on federal question, civil rights, and pendant jurisdictions pursuant to 28 U.S.C. §§ 1331,

10

1343, and 1367(a). The complaint alleged that, although he complied with formal orders regarding the theft of his van, Salisbury law enforcement failed to properly complete a vehicle theft report and file it with the National Criminal Investigation Bureau ("NCIB") and made false accusations in internal reports from 2001 and 2002. Hurst seemed to assert that the failure to file the NCIB report was one reason why State Farm denied his insurance claim. He further complained that State Farm's claims managers and investigators, nationwide, have a history of underpaying and denying legitimate claims of its insured. The complaint alleged that the State Farm defendants acted under the color of state law and committed constitutional torts. In addition, it raised counts of civil rights violations; intentional interference with contractual relations; tortious interference with business relationships; intentional infliction of emotional distress; intentional invasion of privacy by publicizing private facts; intentional false light invasion of privacy; slander per se and libel per se; retaliation; civil conspiracy; tortious breach of contract and bad faith settlement and fraud; inadequate hiring, training, supervision, and discipline; DPPA claims; and state law claims, virtually all of the claims raised in the instant complaint.

The complaint was summarily dismissed under the doctrine of res judicata as to Hurst's claims against State Farm and its agents. The remaining claims were dismissed on the basis that the complaint failed to allege action that implicated the court's federal question or civil rights jurisdiction. In the alternative, the court found that the claims were time-barred, and it declined to retain jurisdiction over state tort claims. *See Hurst v. City of Salisbury*, 2010 WL 4103582 (D. Md. Oct. 18, 2010), *aff'd*, 432 F. App'x 263 (4th Cir. 2011) (not published).

11

Under the doctrine of res judicata (referred to now as claim preclusion), a judgment in a prior suit involving the same parties, or parties in privity with them, bars a subsequent suit on the same cause of action. *See Fairbank's Capital Corp. v. Milligan*, 234 F. App'x 21, 23 (3d Cir. 2007) (not published); *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 392 (3d Cir. 2002). "The rationale is that if the adjudication of an action is binding on parties in privity with the parties formally named in the litigation, then any claims against parties in privity should be brought in the same action lest the door be kept open for subsequent relitigation of the same claims." *Transamerica Occidental*, 292 F.3d at 392.

Collateral estoppel, also known as issue preclusion, refers to the preclusive effect of a judgment on the merits of an issue that was previously litigated or that could have been litigated. *See Fairbank's Capital Corp.*, 234 F. App'x at 23. Issue preclusion occurs "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (quoting Restatement (Second) of Judgments § 27 (1982)). There are four requirements for the application of collateral estoppel: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Id.* (internal quotation marks and citations omitted).

Federal courts in Maryland and Virginia have found, and this court agrees with them, that Hurst is barred under the doctrines of claim and issue preclusion to relitigate his claims relating

12

to the actions of State Farm, Harbin, and Wiegard, and Harbert; individuals who were defendants in prior federal litigation Hurst filed against them. To the extent Hurst seeks to raise additional claims that could have been raised in his prior actions, said claims are also barred. *See CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1994). Hurst's time to raise his claims occurred when he unsuccessfully sought recovery in the District Courts in Virginia and Maryland. Hurst may not relitigate the claims he currently raises against State Farm, Harbin, Wiegard, and Harbert as they are barred under the doctrines of claim and issue preclusion.

## C. Statutes of Limitations

Hurst filed the instant complaint on November 22, 2010. (D.I. 2.) The defendants move for dismissal of most claims on the basis that they are time-barred. Hurst responds that the instant claims did not accrue until November 24, 2008, the date he received State Farm's letter stating that the company had sent personal information to Shalk.

Harbin, Maxwell, Harbert, and State Farm move for dismissal of all contract claims arising from the 2001 theft of the van as time-barred. In Virginia, the statute of limitations for a claim arising from a contract is five years. Va. C. § 8.01-246. In Maryland and Delaware for contract claims the statute of limitations is three years. Md. Code, Courts and Judicial Procedure, § 5-101; 10 Del. C. § 8106. To the extent that Count XIII raises a breach of contract claim for the breach of the covenant of good faith and fair dealing, the instant complaint was filed long after the expiration of the limitations period for any contract claims with regard to the State Farm insurance contract and Hurst's claim for theft of the van.

Harbin, Maxwell, Harbert, Shalk, Connors, and State Farm move for dismissal of the Delaware tort claims and abuse of process as time-barred pursuant to Delaware's two year statute

13

of limitations. 10 Del. C. § 8119. Counts IV, VIII, IX, X, and XI, raise claims wherein the two year limitation period is applicable. Even assuming Hurst's own disclosure of the Affidavit did not make it a public document, Shalk filed the Affidavit in the *Rehoboth Beach* case on November 29, 2006, and the Affidavit was filed in the *Dover* case on November 12, 2008, yet Hurst did not file the instant Complaint until November 22, 2010, approximately ten days after the limitations period had expired with regard to the November 12, 2008 filing.

Similarly, the defendants move for dismissal of the § 1983 claims based upon its two-year limitation period. For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions, *Wilson v. Garcia*, 471 U.S. 261, 275 (1983), and, in Delaware, § 1983 claims are subject to a two-year limitations period. 10 Del. C. § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Id.* Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. *See Smith v. State*, 2001 WL 845654, at \*2 (D. Del. July 24, 2001). The complaint appears to raise § 1983 claims in Counts II, III, IV, V, VI, VII, and XII.[8] For the same reasons as discussed in the preceding paragraph, the claims are time-barred.

Shalk and Connors further move for dismissal of the fraud, intentional interference with contract, and abuse of process claims as time-barred based upon Delaware's three-year statute of limitations. 10 Del. C. § 8106. *In re Winstar Comm., Inc.*, 435 B.R. 33, 43 (Bkrtcy. D. Del. 2010) (Delaware statute of limitations for fraud and Delaware civil conspiracy is three years). Liberally construing the complaint, as the court must, the court cannot say that the fraud and civil

---

[8]Some Counts contain mixed federal and state claims.

14

conspiracy claims are time-barred, at least as to the claims that may have accrued as a result of
the November 12, 2008 filing of the Affidavit.

For the above reasons, the court will grant the motions to dismiss Counts II, III, IV, V (42
U.S.C. § 1983 conspiracy), VI, VII (42 U.S.C. § 1983 constitutional claims), VIII, IX, X, XI, XII,
and XIII as time-barred. The court will deny the motions to dismiss on statute of limitations
grounds as to the State claims contained in Counts V (Delaware conspiracy) and VII (Delaware
fraud).

## D. Absolute Litigation Privilege

The defendants argue that they are protected by the absolute litigation privilege.
Delaware adheres to the common law rule of "absolute privilege" that "protects from actions for
defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial
proceedings so long as the party claiming the privilege shows that the statements issued as part of
a judicial proceeding and were relevant to a matter at issue in the case." *Barker v. Huang*, 610
A.2d 1341, 1345 (Del. 1992). Any claim for claim for "breach of privacy" is defeated by the
absolute litigation privilege under Delaware law. "The absolute privilege would be meaningless
if a simple recasting of the cause of action from 'defamation' to 'intentional infliction of
emotional distress' or 'invasion of privacy' could void its effect. . . . To the extent that such
statements were made in the course of judicial proceedings, they are privileged, regardless of the
tort theory by which the plaintiff seeks to impose liability." *Barker*, 610 A.2d at 1349.

It is evident from court filings that information contained in the Affidavit occurred during
the course of judicial proceedings and, pursuant to precedent, cannot be considered as violating
Hurst's privacy rights or inflicting emotional distress. Accordingly, the defendants are protected

15

under the absolute litigation privilege and, for this reason, the court finds that dismissal of the complaint is appropriate.

## E. Malicious Defense

UNIC moves for dismissal of the complaint on the grounds that it contains no direct claim against it. It argues that Hurst seeks to impose liability upon defense counsel and insurers of defendants in other litigation under a "malicious defense" claim, even though such a claim is not cognizable under Delaware law. *See Rowlands v. Phico Ins. Co.*, 2000 WL 1092134 (D. Del. July 27, 2000). Delaware courts have expressly rejected a cause of action for malicious defense for sound policy reasons." *Id.* (citing *Hostetter v. Hartford Ins. Co.*, 1992 WL 179423, at *7-8 (Del. Super. Ct. July 13, 1992) (holding, as a matter of law, that [the defendant] had no duty to deal with [the] plaintiff in good faith, to settle her claim promptly or to refrain from 'malicious defense' of her claim, or to use reasonable care in the investigation and handling of [her] claim"). A malicious defense claim is not cognizable under Delaware law. Therefore, the court will grant the motion to dismiss to the extent that Hurst attempts to raise said claim.

## F. DPPA - Count I

Count I, Hurst's DPPA claim, is central to all other claims in the complaint. In an apparent effort to avoid dismissal by reason of claim and issue preclusion, the complaint alleges that the DPPA violations are "entirely independent" litigation from the State Farm breach of insurance contract litigation. (D.I. 2, ¶ 4.) The complaint alleges that State Farm, through its outside agents and legal counsel, violated § 2722(a) and § 2722(b) of the DPPA when it disclosed Hurst's personal information as defined 18 U.S.C. § 2725(3) and disclosure was not permissible under the DPPA.

16

The defendants move for dismissal of the DPPA claim on the grounds that: (1) the DPPA claim is not directed towards all the defendants; (2) the complaint alleges that State Farm and Shalk, but no other defendants, knowingly obtained, used, or disclosed personal information; (3) Hurst disclosed the Affidavit at issue in a public record by virtue of a prior lawsuit that he filed; (4) the Affidavit was not obtained from a motor vehicle record; (5) the Affidavit, as an exhibit to a lawsuit, falls within the litigation use exception; (6) the disclosure of the Affidavit is not actionable by reason of the common law litigation privilege; and (7) the claim is barred by the applicable statute of limitations.

The DPPA regulates the disclosure and resale of personal information contained in the records of state motor vehicle departments ("DMV's"). *See Reno v. Condon*, 528 U.S. 141, 143 (2000). Under the DPPA, it is "unlawful for any 'person' knowingly to obtain or disclose any record for a use that is not permitted under its provisions, or to make a false representation in order to obtain personal information from a motor vehicle record." *Reno v. Condon*, 528 U.S. at 146 (quoting §§ 2722(a) and (b)). A person who violates the DPPA "shall be liable to the individual to whom the information pertains, who may bring a civil action." *Pichler v. UNITE*, 542 F.3d 380, 391 (3d Cir. 2008) (quoting 18 U.S.C. § 2724(a)). The DPPA thus confers a cause of action to "the individual" whose personal information from his or her motor vehicle records is at issue. *See id.* The DPPA provides no statute of limitation for actions brought under its provisions; civil actions arising under federal law, however, must be brought within four years of the action giving rise to the suit. *See* 28 U.S.C. § 1658(a).

The DPPA defines personal information" as any information "that identifies an individual, including an individual's photograph, social security number, driver identification

17

number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information," but not including "information on vehicular accidents, driving violations, and driver's status." *Id.* at 144 (quoting § 2725(3)). A "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id.* (quoting § 2725(1)).

"The DPPA is structured such that § 2721(a) provides the general prohibition on the release and use of motor vehicle information, and § 2721(b) enumerates fourteen specific exceptions to the general prohibition. *Pichler*, 542 F.3d at 394-95. The DPPA requires disclosure of personal information "for use in connection with matters of motor vehicle or driver safety and theft." *Reno v. Condon*, 528 U.S. at 145.

The DPPA creates liability when three elements are met: (1) the defendant knowingly obtains, discloses, or uses personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted. *See* 18 U.S.C. § 2724(a); *see also Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008). "The plain meaning of the third factor is that it is only satisfied if shown that obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b)." *Id. See also Reno v. Condon*, 528 U.S. 141 at 146.

Initially the court notes that it is far from clear that the Affidavit in question is a motor vehicle record. To be considered as a motor vehicle record, the document in question must be issued by a DMV. The Affidavit at issue, however, is on a State Farm form, and there is no indication on its face that it issued from a DMV.

18

Even if the Affidavit is a motor vehicle record, the complaint does not allege that any defendants performed a search with any state DMV or that they caused a DMV search to be made by a third party to obtain Hurst's "personal information." Instead, the complaint alleges that State Farm, through attorney Harbert, provided Shalk the Affidavit. State Farm is not a state motor vehicle agency. *See Margan v. Niles*, 250 F. Supp. 2d 63, 68-69 (N.D.N.Y. 2003) (Congress emphasized that DPPA's purpose was to prohibit state motor vehicle agencies from disclosing personal information contained in motor vehicle records, except in certain circumstances specifically enumerated in the statute.).

Moreover, even if State Farm provided the information to Shalk, the source of the personal information concerning Hurst was available from another source. Hurst, himself, provided the information when, on November 7, 2005, he filed a lawsuit against State Farm in the United States District Court for the Eastern District of Virginia and attached the Affidavit, in a non-redacted form, as an exhibit to the complaint. Where, as here, a defendant does not obtain a plaintiff's "personal information" from a state motor vehicle agency, but instead, obtains that information directly from the plaintiff, any subsequent disclosure of that "personal information" is not a DPPA violation. *See Ocasio v. Riverbay Corp.*, 2007 WL 1771770, at *6 (S.D.N.Y. June 19, 2007); *O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933 (N.D. Ill. 2002). The lack of allegations establishing that Hurst's personal information was obtained by the defendants from any state DMV is fatal to his claim.

In the alternative, the court finds that the use of the Affidavit falls within the ambit of a use exception as listed under § 2721 of the DPPA. Section 2721(b)(4) states that DPPA-covered personal information may be disclosed "[f]or use in connection with any civil, criminal,

administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders." Here, the Affidavit at issue was used during the course of the *Dover* and the *Rehoboth Beach* litigation. *See, e.g., Briggman v. Ross*, 2009 WL 3254459, at *2 (W.D. Va. Oct. 9, 2009) (granting Rule 12(b)(6) motion and dismissing DPPA claims pursuant to the litigation exception when the defendant accessed the plaintiff's DMV records during the course of litigation); *Manso v. Santamarina & Assocs.*, 2005 WL 975854, at *4 (S.D.N.Y. Apr. 26, 2005) (dismissing DPPA claim when the defendants attached a DMV Report with plaintiff's address to papers filed in litigation in the New York Housing Court); *but see Pichler v. UNITE*, 585 F.3d 741, 752 (3d Cir. 2009) (the exception does not include disclosure of information for the purpose of "identify[ing] potential litigants and claimants who may wish to pursue remedies for [defendant's] violation of the DPPA.").

The court takes judicial notice that the Affidavit was used in the *Dover* and *Rehoboth Beach* cases to establish a point in the litigation when it was used to rebut Hurst's claim that he was entitled to damages for the van as a result of an April 9, 2001 incident inasmuch as the theft of the van occurred on April 3, 2011, several days prior to April 9, 2001. (D.I. 31, ex. D.) In both instances, there was a specific proceeding, wherein Shalk submitted the Affidavit in "an effort to establish" a particular point. Contrary to Hurst's position, the Third Circuit's holding of *Pichler*, *supra*, does not support Hurst's position that the use of the Affidavit does not fall within the litigation use exception. Indeed, the facts alleged by the complaint are distinguishable from *Pichler*, since there were legal proceedings in the instant case, but in *Pichler* no proceeding in connection with which the driver's record information could have been used was identified.

20

The complaint does not contain any factual allegations that plausibly suggest that the defendants accessed Hurst's DMV records "for a purpose not permitted under [§ 2721(b) ]." 18 U.S.C. § 2724(a). For the reasons stated above, the court will grant the defendants' motions to dismiss the DPPA claims.

## G. 42 U.S.C. § 1983 - Counts II, III, IV, V, VI, VII, XII, XIV

The complaint alleges violations of 42 U.S.C. § 1983,[9] violations of privacy rights under the Fourth Amendment,[10] violations of the right to privacy by publicizing private facts and by false light, conspiracy, retaliation, fraud that resulted in due process violations, failure to train, hire, supervise or discipline,[11] and generalized constitutional claims. (D.I. 2, Counts II, III, IV, V, VI, VII, XII, XIV.) In reviewing the complaint, it is not clear in Counts V and VII whether Hurst intends to plead only State claims, only federal claims, or both.

The defendants move for dismissal of constitutional claims on the basis that: (1) UNIC, HMIC, Harbin, Wiegard, Harbert, Shalk, Connors, Speakman, and State Farm are not state

---

[9]Appellate courts are split on the issue of whether statutory rights created by the DPPA are enforceable both directly and under § 1983. *See Collier v. Dickinson*, 477 F.3d 1306, 1311 (11th Cir. 2007) (the statutory rights created by the DPPA are enforceable both directly and under § 1983; *see also Roth v. Guzman*, 60 F.3d 603 (6th Cir. 2011); *but see McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005) (under the DPPA there is no private right of action pursuant to 42 U.S.C. § 1983). The Third Circuit has not addressed the issue, but has stated, "like § 1983, the DPPA sounds in tort." *Pichler v. UNITE*, 542 F.3d 380, 388 (3d Cir. 2008).

[10]The "right of privacy" is founded in the Fourteenth Amendment's concept of personal liberty. *Whalen v. Roe*, 429 U.S. 589, 599 n.23 (1977).

[11]Count XII does not refer to § 1983. However, it sets forth the constitutional standard of "deliberate indifference." *See Connick v. Thompson*, ___U.S.___, 131 S.Ct. 1350, 1359 (2011) (In order for a municipality's failure to train its employees to rise to the level of city policy or custom actionable under § 1983, the failure to train must amount to a deliberate indifference to the rights of persons with whom the untrained employees come into contact.).

21

actors; (2) Rehoboth Beach and Speakman cannot be held liable under a § 1983 claim on the basis of vicarious liability; (3) the defendants lack the requisite personal involvement necessary to impose liability under § 1983; (4) because the complaint fails to state a DPPA claim, the counts that stem from the DPPA should also be dismissed; (5) Banks and Speakman, in their official capacities, are not capable of being sued under 42 U.S.C. § 1983, and there are no allegations that they acted outside their official capacity; (6) because Rehoboth Beach is a named defendant, the claims against Banks and Speakman are necessarily redundant; and (7) Hurst has not adequately pled a claim under § 1983.

Initially, the court notes that the § 1983 claims are time-barred as discussed above. *See* ¶ IV.B., *supra*. Regardless, the court will address dismissal on other grounds. As is well-established, when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). The majority of the defendants, save Rehoboth Beach, Speakman (former city solicitor for Rehoboth Beach) and Banks (chief of police for Rehoboth Beach) are not state actors. In addition, except for the allegations directed towards Harbert, Wiegard, and Shalk, none of whom are State actors, the complaint fails to establish the requisite personal involvement necessary to impose liability under § 1983. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.").

22

As to the § 1983 claim against Rehoboth Beach, "[a]" municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected'"to such deprivation." *Connick v. Thompson*, 131 S.Ct. at 1359 (citations omitted). However, under § 1983, local governments are responsible only for "their own illegal acts" and are not vicariously liable under § 1983 for the actions of its agents. *Id.* (citations omitted); *see also Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122 (1992) (city is not vicariously liable under § 1983 for constitutional torts of its agents; it is only liable when it can be fairly said that the city itself is the wrongdoer."). Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997); *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Hurst has failed to plead that Rehoboth Beach was the "moving force" behind any alleged constitutional violation. Absent any allegation that a custom or policy established by the Rehoboth Beach directly caused harm to Hurst, his § 1983 claim cannot stand.

Counts III and IV allege that the DPPA violations also violated Hurst's right to privacy under the Fourth Amendment and right to privacy by publicizing private facts and by false light, and they, too, fail to state a claim upon which relief may be granted. The Fourth Amendment states, in pertinent part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const.

23

amend. IV. Hurst does not allege that he suffered from an unreasonable search or that he seeks to

suppress evidence obtained by an unreasonable search. To the extent Hurst complains that

disclosure of his personal information violates his right to privacy, the Supreme Court has opined

that the "right of privacy" is founded in the Fourteenth Amendment concept of personal liberty,

not the Fourth Amendment. *See Whalen v. Roe*, 429 U.S. 589, 599 n.23 (1977).

In addition, Hurst's claims are fatally flawed, because the information allegedly disclosed

was previously a matter of public record. Even assuming a violation of a constitutional right of

privacy, "[t]here is no liability when the defendant merely gives further publicity to information

about the plaintiff that is already public. Thus, there is no liability for giving publicity to facts

about the plaintiff's life that are matters of public record. . . ." Restatement (Second) of Torts

§ 652D (1977) (Comment (b)). *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1974)

(Supreme Court concludes there was no invasion of privacy when a broadcasting company

publicized the name of a rape victim, since the broadcaster obtained the name through court

papers because "interests in privacy fade when the information involved already appears on the

public record."). The general principle that matters of public record are not private applies with

even greater force to information in documents filed as part of a court proceeding. *Id.* at 492-93.

Hurst initially disclosed the personal information in a complaint he filed several years prior to the

filing of the Affidavit by Shalk. Hence, his claims fail.

Count V, the § 1983 claim conspiracy also fails. To state a conspiracy claim under

§ 1983, Hurst must show that "persons acting under color of state law conspired to deprive him

of a federally protected right." *Ridgewood Bd. of Educ. V. N.E. ex rel. M.E.*, 172 F.3d 238, 254

(3d Cir. 1999). In addition, there must be evidence of actions taken in concert by defendants

with the specific intent to violate that right. *Williams v. Fedor*, 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd*, 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)). A § 1983 conspiracy claim only arises, however, when there has been an actual deprivation of a right. *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1311 (7th Cir. 1987); *see also Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) (recognizing that deprivation of a right was a necessary predicate to § 1983 conspiracy liability). *Accord Perano v. Township of Tilden*, 2011 WL 1388381 (3d Cir. Apr. 13, 2011).

Hurst alleges that the defendants conspired to violate his DPPA and constitutional rights. As previously discussed in this memorandum, the complaint fails to allege that the defendants violated the DPPA or deprived Hurst of any federally protected right. In addition, while Hurst alleges that the defendants conspired against him, he does so in a conclusory manner without facts to support his claim. Accordingly, the court finds that Hurst has failed to state a § 1983 conspiracy claim.

Likewise, Hurst's retaliation claim, found at Count VI, assuming he raises it pursuant to § 1983, also fails. Proof of a retaliation claim requires that Hurst demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). As discussed above, most of the defendants are not State actors and, furthermore, the allegations do not point to any adverse actions taken against Hurst by a State actor.

25

Count XII alleges inadequate hiring, training, supervision, and discipline. Hurst alleges

the defendants "failed to obtain for themselves and failed to provide others, adequate training,

supervision, and discipline, and failed to properly screen and hire employees and outside." A

claim for supervisory liability or liability based upon a failure to train involves four elements:

(1) existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was

aware of the potential for this unreasonable risk; (3) the supervisor was indifferent to the risk;

and (4) the injury resulted from the policy or practice. *Sample v. Diecks*, 885 F.2d 1099, 1118

(3d Cir. 1989); *see also Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240

(3d Cir. 2005) (not published). Hurst alleges nothing more than the defendants injured him

based upon conclusory allegations. In effect, Hurst attempts to assert untenable claims for

vicarious liability against various supervisors by couching them in the language of failure-to-train

or failure-to-supervise claims.

Finally, the claims of generalized constitutional violations found at Counts VII and XIV

are insufficient to withstand dismissal.[12] *See Brown v. Borough of Mahaffey*, 35 F.3d 846, 850

(3d Cir. 1994) ("The plaintiffs have asserted several constitutional violations; they cannot attach

a "catch-all" tort claim as a fallback if those specific constitutional claims fail.").

For the above reasons, the court will grant the motions to dismiss Counts II, III, IV, V, VI,

VII, XII, and XIV.

---

[12]Hurst's allegations improperly incorporate the *Dover* case claims into the instant case in
an attempt to plead due process violations. Count VII also seems to raise criminal claims.

## H. State Claims - Counts IV, V, VII, VIII, IX, X, XI, XIII, XV

The defendants move for dismissal on the grounds that the complaint does not adequately state claims for recovery under Delaware state law. As discussed above, many of the State claims are time-barred, including those found in Count IV for invasion of privacy, Count VIII for abuse of process, Count IX for intentional infliction of emotional distress, Count X for tortious interference with contractual relations, and Count XI for tortious interference with business relations.

It is unclear if Count IV is raised as a constitutional claim or as a state claim. Regardless, HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm argue that the complaint fails to state a claim of the privacy tort of "false light." The tort of false light invasion of privacy, recognized by the Delaware Supreme Court in *Barbieri v. News-Journal Co.*, 189 A.2d 773 (Del. 1963), is defined in the Restatement (Second) of Torts § 652E as the tort of giving publicity to something that places the plaintiff in a false light before the public, the false light being highly offensive to a reasonable person, and knowing of or acting "in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Wyshock v. Malekzadeh*, 1992 WL 148002, at *2 (Del. Super. Ct. June 10, 1992). The allegations in the complaint fail to state a claim of invasion of privacy. There is no indication of reckless disregard in filing the Affidavit or that the Affidavit contained false information.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm argue that Count V fails to state a claim for conspiracy under Delaware law. Under Delaware law, to state a claim for conspiracy, the complaint must allege (1) a confederation or combination of two or more persons (2) an unlawful act done in furtherance of the conspiracy (3) and actual damage.

27

*Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987). Count V as it now stands does not meet pleading requirements of *Iqbal* and *Twombley*. The complaint alleges in a conclusory manner, without supporting facts, that the defendants acted in concert with regard to the filing by Shalk. In fact, Hurst alleges vicarious liability, making it impossible for the parties to have acted in concert. Further, as discussed above, the complaint fails to identify the violations of the DPPA or constitutional violations that Hurst relies upon as unlawful acts in furtherance of the alleged conspiracy.

HMIC, Rehoboth Beach, Banks, Speakman, and State Farm move for dismissal of the catch-all averments in Count VII on the basis that Count VII fails to meet the pleading requirements of *Iqbal* and *Twombley*. Count VII is titled, "Fraud, Fraudulent Concealment, and Fraud on the Court." However, it appears that the intent behind Count VII is to retry or again raise the same claims as those raised in the *Dover* case.

Common law fraud consists of five elements: (1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance. *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). These elements also comprise a claim of fraudulent concealment, except that a plaintiff must allege a deliberate concealment by the defendant. *Nicolet v. Nutt*, 525 A.2d 146, 149 (Del. 1987). The failure to allege any of the elements warrants dismissal of the claim. *Anderson v. Airco, Inc.*, 2004 WL 1551484 (Del.

In order to meet the necessarily demanding standard for proof of fraud upon the court there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. *Herring v. United States*, 424 F.3d 384, 386-87 (3d Cir. 2005). In addition, a determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and it must be supported by clear, unequivocal and convincing evidence. *Id.* Actions for fraud upon the court are rare. *Herring*, 424 F.3d at 386.

The complaint fails to allege the elements of fraud, fraudulent concealment, or fraud upon the court, particularly that the defendants made false representations of fact or knew any representations were false, or knowingly made false representations.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm move to dismiss Count VIII, the abuse of process claim, on the grounds that it is deficiently pled. The elements of an abuse of process claim are: (1) an ulterior improper purpose; and (2) a willful act improperly used in the regular conduct of proceedings. *STMicroelectronics N.V. v. Agere Sys., Inc.*, 2009 WL 1444405 (Del. Super. Ct. May 19, 2009). The improper purpose is usually to obtain a collateral advantage. *See Pfeiffer v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 7062498 (Del. Super. Ct. Dec. 20, 2011). The allegations in the complaint do not give rise to an abuse of process claim. While the complaint alleges that the Affidavit was filed in violation of the DPPA, which as discussed above it was not, the allegations fail to rise to the level that the Affidavit was improperly used. Specifically, the court notes the failure to allege coercion or any collateral advantage to defendants arising from said coercion.

29

HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm move to dismiss Count IX on the grounds that the complaint fails to allege any extreme and outrageous conduct on their behalf under the theory of intentional inflection of emotional distress. The elements of intentional or reckless infliction of emotional distress can be established when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Cooper v. Board of Educ. of Red Clay Consol. Sch. Dist.*, 2009 WL 2581239, at *3 (Del. Super. Ct. Aug. 20, 2009). A claim for intentional infliction of emotional distress may be made even in the absence of accompanying bodily harm, if the conduct is outrageous. *See Cummings v. Pinder*, 574 A.2d 843, 845 (Del. 1990). The complaint fails to allege any extreme and/or outrageous conduct on behalf of the defendants. Indeed, it is difficult to find any extreme and/or outrageous conduct by the defendants when Hurst, himself, disclosed the personal information that he now alleges causes him distress.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, Speakman, and State Farm move for dismissal of Count X, tortious interference with Hurst's contractual relations, on the grounds that the complaint fails to plead the requisite facts to establish that they had any information regarding the contract between State Farm and Hurst or that they took any action to interfere with the contractual relationship. To survive dismissal, a claim for tortious interference with contractual relations must allege: (1) a contract; (2) about which defendant knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; and (5) which causes injury. *Aspen Advisors, LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1266 (Del. 2004).

justification; and (5) which causes injury. *Aspen Advisors, LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1266 (Del. 2004).

The complaint alleges in a conclusory manner, without supporting facts, that the defendants used the DPPA as a means to coerce Hurst into settling an insurance claim with State Farm. As previously stated, the complaint fails to state a claim for violations of the DPPA. Moreover, even if there were violations of the DPPA, the allegations fail to make the leap that the alleged DPPA violation was a factor in any alleged breach of contract.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, and Speakman move for dismissal of Count XI, the tortious interference with business relations claim, on the grounds that the Count is overly vague, generalized, and does not adequately state a claim. To survive dismissal, a claim for tortious interference with business relations must allege: (a) the reasonable probability of a business opportunity; (b) the intentional interference by defendant with that opportunity; (c) proximate causation; and (d) damages." *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001). Hurst states that he is an independent contractor engaged in the purchase and transfer of major weapons systems. He alleges that he directly challenged his criminal convictions in the *Dover* case and that the *Dover* case set forth the "felonious acts of defendants." The complaint goes on to allege, in a conclusory manner, that the defendants "have tortiously interfered with Hurst's business relations, but presents no facts to support the claim. The allegations fall far short of meeting the elements of a tortious interference with business relations claim. Notably, there are no facts alleged that any defendant interfered with Hurst's business opportunities.

HMIC, Rehoboth Beach, Shalk, Connors, Banks, and Speakman move for dismissal of Count XIII, breach of the covenant of good faith and fair dealing, on the grounds that it fails to

31

order to state a claim for breach of the implied covenant of good faith and fair dealing, a party "must allege (1) a specific implied contractual obligation, (2) a breach of that obligation by the defendant, and (3) resulting damage to the plaintiff." *Kelly v. Blum*, 2010 WL 629850, at \*13 (Del. Ch. Feb. 24, 2010). Hurst has failed to plead any specific implied contractual obligation or breach of that obligation, both of which are essential elements of this claim.

The catch-all State claims contained in Count XV fail to meet the pleading requirements of *Iqbal* and *Twombly*. The complaint alleges, in a conclusory manner Rehoboth Beach, State Farm, UNIC, and HMIC are subject to vicarious liability on all state law claims for the acts of their employees, legal counsel, agents and co-conspirators. Under Delaware law, Hurst has no direct cause of action against the tortfeasor's liability insurer. *See Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 533-34 (Del. Super. Ct. 1990) (Under Delaware law, an injured party may not bring a direct action against a liability insurer based upon the negligence of the insured.). Accordingly, the claims against State Farm, UNIC, and HMIC fail. Count XV fails to identify any cognizable legal theory or any conduct that Rehoboth Beach violated Hurst's rights under state law.

For the foregoing reasons, the court will grant the motions to dismiss Counts IV, V, VII, VIII, IX, X, XI, XIII, and XV.

## V. CONCLUSION

For the above reasons, the court will grant the motions to dismiss complaint, as well as UNIC's motion to file excess pages. (D.I. 23, 25, 26, 28, 29, 32, 43, 51, 60, 61, 64.) To the extent Hurst seeks to amend his complaint, the court finds that any such amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962) (indicating that district court may deny

32

leave to amend on the basis of futility). All other motions will be denied as moot. (D.I. 36, 38, 44, 66, 70.)

An appropriate order will be issued.

CHIEF, UNITED STATES DISTRICT JUDGE

$\underline{Feb\ 9}$, 2012

Wilmington, Delaware

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

JERRY A. HURST, )
)
        Plaintiff, )
)
v. ) Civ. Action No. 10-1001-GMS
)
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, et al., )
)
        Defendants. )

**ORDER**

At Wilmington this 9<sup>+h</sup> day of __Feb__, 2012, for the reasons set forth in the

Memorandum issued this date;

1. The complaint is dismissed. The court finds that amendment is futile.

2. The defendant United National Insurance Company's motion to dismiss is **granted**.

(D.I. 23.)

3. The defendant United National Insurance Company's motion for leave to file excess

pages is **granted**. (D.I. 25.)

4. The defendants City of Rehoboth Beach's and Harleysville Mutual Insurance

Company's motion to dismiss is **granted**. (D.I. 26.)

5. The defendant Marty Harbin's motion to dismiss is **granted**. (D.I. 28.)

6. The defendant Collin Shalk's motions to dismiss are **granted**. (D.I. 29, 51.)

7. The defendant Kevin Connors' motion to dismiss and for joinder is **granted**. (D.I.

32.)

8. The plaintiff Jerry A. Hurst's motion to strike is **denied**. (D.I. 36.)

9. The plaintiff Jerry A. Hurst's request for default as to Keith Banks is **denied** as moot. (D.I. 38.)

10. The defendant Keith Banks' motion to dismiss is **granted**. (D.I. 43.)

11. The defendant Walter Speakman's motion to dismiss for insufficient of service of process is **denied** as moot. (D.I. 44.)

12. The defendants Guy Harbert's and Maxwell Wiegard's motion to dismiss and for joinder is **granted**. (D.I. 60.)

13. The defendant Walter Speakman's motion to dismiss is **granted**. (D.I. 61.)

14. The defendant State Farm Mutual Automobile Insurance Company's motion to dismiss is **granted**. (D.I. 64.)

15. The plaintiff Jerry A. Hurst's motion to substitute personal representative as party is **denied** as moot. (D.I. 66.)

16. The defendant Walter Speakman's motion to substitute is **denied** as moot. (D.I. 70.)

17. The clerk of court is directed to **close** the case.

CHIEF, UNITED STATES DISTRICT JUDGE

2